```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                   CHARLOTTE DIVISION
                    3:07CV511-02-W
                   (3:05CR104-21-W)
```

| | |
|---|---|
| **GERALD HARRISON,**         )<br>        Petitioner,         )<br>                              )<br>        v.                    )<br>                              )<br> **UNITED STATES OF AMERICA,**  )<br>        Respondent.          )<br>_____) | **O R D E R** |

**THIS MATTER** is before this Court upon an initial review of the petitioner's "Motion To Vacate, Set Aside, Or Correct Sentence" under 28 U.S.C. §2255, filed December 3, 2007 (Doc. No. 1).  For the reasons stated herein, the petitioner's Motion to Vacate will be summarily <u>denied</u> and <u>dismissed</u>.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pertinent to this Motion, the record reflects that on April 25 2005 a multi-count Bill of Indictment was filed, charging the petitioner (and 24 other persons) with conspiring to possess with intent to distribute five kilograms or more of cocaine powder and 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One). (Doc. No. 10, Case No. 3:05-CR-104-21-W).  Although the petitioner initially pled "not guilty" to that charge, on October 5, 2005, he entered into a written Plea Agreement with the government.  (Doc. No. 215, Case No. 3:05-CR-104-21-W).  By the terms of that Agreement, the parties

agreed, <u>inter alia</u>, that the petitioner would plead guilty to Count One in exchange for the government's promise to limit the petitioner's potential exposure to his involvement with between 35 and 50 grams of crack cocaine.  The Agreement further provided that the corresponding adjusted offense level for the subject offense was 28; and that upon his conviction, the petitioner would face no fewer than five years and no more than 40 years imprisonment.

Also on October 5, 2005, the petitioner appeared before a magistrate judge for his Plea and Rule 11 Hearing.  On that occasion, the Court engaged the petitioner in its standard, lengthy colloquy to ensure that his guilty plea was being intelligently and voluntarily tendered.  (Doc. No. 215, Case No. 3:05-CR-104-21-W).  The Court placed the petitioner under oath and carefully considered his answers to all of its questions. Of particular relevance here, in response to the Court's question concerning his satisfaction with counsel, the petitioner stated that he and counsel "weren't communicating well in the beginning, but everything's fine now."[1]  Ultimately, the Court determined that the petitioner's guilty plea was knowingly and freely made. Thus, at the conclusion of that proceeding, the petitioner and

---

[1] More than a year after that Hearing, defense counsel filed a "Motion To Withdraw," reporting only that he could "no longer represent the defendant . . . ." The Court denied that Motion as insufficient.  Interestingly, during his subsequent Sentencing Hearing, the petitioner made no mention of any continued problems with counsel, <u>and</u> he declined to make any statement when asked if he wished to do so.

his attorney signed the "Entry and Acceptance of Guilty Plea . . ." form, and the Court conditionally accepted that plea. (Doc. No. 216, Case No. 3:05-CR-104-21-W).

Next, on December 20, 2006, the Court held the petitioner's Factual Basis and Sentencing Hearing.  At the beginning of that Hearing, the petitioner reaffirmed the representations which he had made during his Plea Hearing, including that he had freely and voluntarily tendered his guilty plea. (Transcript of Sentencing Hearing, Doc. No. 486, Case No. 3:05-CR-104-W). In addition, the petitioner told the Court that if he then were asked the same questions which had been asked of him during his Plea and Rule 11 Hearing, he would have given the same answers to those questions. Further, the petitioner also reiterated that he, in fact, had "committed the crime" for which he was being convicted.  Consequently, the Court found that the petitioner's guilty plea was proper, and it unconditionally accepted the same.

Next, the parties advised the Court of their stipulation to a factual basis for the petitioner's conviction as described in their Plea Agreement.  In response to the Court's question concerning his understanding of his Pre-Sentence Report, the petitioner stated that he and counsel thoroughly had reviewed the Report, and he had no questions about it.

Thereafter, defense counsel asked the Court to vary the petitioner's sentence from both the 108 to 135-month term which

was recommended in the Pre-Sentence Report and the 70 to 87-month term which was applicable by virtue of the stipulations made in the parties' Plea Agreement.  Specifically, defense counsel asked the Court to impose a lower term based upon the petitioner's low-level involvement in the subject conspiracy, his significant work history, and the high level of support which he was providing for his wife and children.  Nevertheless, the petitioner declined to make any statement in his own behalf.

Next, the government conceded the accuracy of the statements made by defense counsel regarding the petitioner's role and his personal history.  However, counsel for the government asked the Court to weigh that information against the petitioner's criminal record, which included a series of convictions for impaired driving, and carrying concealed weapons.

For its part, the Court found that the petitioner's Plea Agreement already had allowed him to escape punishment on the larger quantities of crack cocaine which were identified in his Pre-Sentence Report; and that, although the Guidelines merely were advisory, the recommended 70 to 87-month term presumptively was reasonable in this case.  Thereafter, the Court sentenced the petitioner to a term of 74 months imprisonment. ((Doc. No. 395, Case No. 3:05-CR-104-21-W).  The Court's Judgment was filed on January 10, 2007.

The petitioner did <u>not</u> appeal either his conviction or his

sentence. Rather, after waiting nearly one year from the date on which he was sentenced, on December 5, 2007, the petitioner returned to this Court and filed the instant Motion to Vacate.

In his Motion, the petitioner first alleges that his former attorney was ineffective for "operating under a gross and material conflict of interest since he was running for and elected to the Office of Chief Prosecutor of Gaston County. . . " during the period when he was representing the petitioner in this Court. Second, the petitioner alleges that he was "illegally sentenced in violation to the laws of the United States . . . " by virtue of counsel's failure to argue for a downward departure, or to challenge "unrelated prior criminal behavior, or challenge same pre-sentencing, leaving [petitioner] at the whim of the prosecutor and PSIR." Furthermore, along with this same claim, the petitioner argues that he now should be given "consideration for a further reduction based upon points in the criminal history [that were] wrongly assessed and left unchallenged." Notwithstanding his obvious beliefs to the contrary, however, the Court has determined that the petitioner's two claims are defeated by the underlying record, and the relevant precedent.

## II. **ANALYSIS**

1. **This Court is authorized to promptly review and dismiss any § 2255 motion which does not contain a claim that entitles the petitioner to relief**.

Pursuant to Rule 4(b) of the Rules Governing Section 2255

Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . " in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In the event it is determined that the petitioner is not entitled to relief, the reviewing Court must dismiss the motion.

Following such directive, this Court has carefully reviewed the petitioner's Motion to Vacate and the pertinent record evidence. As hereafter explained, such review clearly establishes that the petitioner is not entitled to relief on any of his claims.

### 2. **The petitioner's non-counsel related claim is not cognizable**.

Taking the claims out of turn, to the extent that the latter portion of the petitioner's second claim can be construed as an allegation that his criminal history score erroneously was calculated, that argument simply is not cognizable in this proceeding. Indeed, it has not escaped the Court's attention that, pursuant to the terms of his written Plea Agreement, the petitioner voluntarily and freely waived his right to bring a non counsel-related challenge to the calculation of his sentence. See United States v. Lemaster, 403 F.3d 216, 220-21 (4th Cir. 2005) (considering it an issue of first impression, and holding that a defendant may waive his right to contest conviction or sentence

in § 2255 motion "so long as the waiver is knowing and voluntary").

Moreover, as has been noted already, the petitioner did not pursue a direct appeal at which he would have been required to raise this claim. In United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), cert. denied, 529 U.S. 1010 (2000), the Court pointed out that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." Id., citing United States v. Frady, 456 U.S. 152 (1982); see also Bousley v. United States, 523 U.S. 614, 621 (1998) (failure to challenge matter on direct appeal, absent certain compelling circumstances, bars collateral review of same); and Stone v. Powell, 428 U.S. 465, 477 n.10 (1976).

Consequently, inasmuch as the petitioner does not challenge the applicability of the waiver provision, and he has not even hinted at any explanation which could establish either "cause and prejudice" for his default, or any other excuse which would allow this claim to be reached, the same must be dismissed.

### 3. **The petitioner's claims that counsel was ineffective also must be flatly rejected**.

With respect to claims of ineffective assistance of counsel,

a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984).  In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31.  If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697.

Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998), <u>cert. denied</u>, 528 U.S. 855 (1999).  Rather, the Court "can only grant relief under

8

. . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

More critically, inasmuch as this petitioner has alleged ineffective assistance of counsel following the entry of his guilty plea, he has a different burden to meet. See Hill v. Lockhart, 474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843 (1988). The Fourth Circuit described the petitioner's burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty and would have insisted on going to trial</u>."

Hooper, 845 F.2d at 475 (emphasis added); accord Hill v. Lockhart, 474 U.S. at 59-60; and Fields, 956 F.2d at 1297. Critically, however, if a petitioner fails to meet his burden of demonstrating prejudice, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697. Thus, "the central inquiry" is whether, but for counsel's alleged errors, this petitioner would have insisted on a trial, Slavek v. Kinkle, 359 F.Supp.2d 473, 491 (E.D. Va. 2005) (summarily rejecting claims of ineffectiveness on prejudice prong

based on petitioner's failure and inability to argue that but for alleged errors, he would have insisted on trial or entered a different guilty plea). Courts have stated that this inquiry is an "objective one based on whether going to trial might reasonably have resulted in a different outcome." Martin v. United States, 395 F. Supp. 2d 326, 329 (D.S.C. 2005). See also Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001) (finding that in light of overwhelming evidence of guilt and lack of available defenses, petitioner could not establish prejudice under the modified "reasonable probability" standard); and Burket v. Angelone, 208 F.3d 172, 190-91 (4th Cir. 2000) (same).

In the present case, the Court notes that the petitioner has not bothered to assert or event to suggest that but for counsel's alleged ineffectiveness, he would have insisted upon going to trial in this matter. This failure is enough, standing alone, to justify the dismissal of the petitioner's claims against counsel.

Further, as to the evidence of the petitioner's guilt and the lack of available defenses, the Court notes that the petitioner admitted during his Plea and Rule 11 Hearing that he was guilty and, during his Sentencing Hearing, he expressly advised the Court that he had "committed the crime." Moreover, the petitioner does not now proffer any information as to a defense which counsel could have raised for him.

On the contrary, during that Sentencing Hearing, in the

10

course of asking the Court to disregard the higher offense level calculations set forth in the petitioner's Pre-Sentence Report, the government advised the Court of some of the evidence which could have been used against the petitioner, including evidence which was surreptitiously gleaned from the intercepted telephone calls of one of the petitioner's co-conspirators.  The Court also is mindful that the petitioner's Plea Agreement allowed him to avoid being sentenced for the drug amounts which were revealed in those telephone calls.  On this record, then, it is clear that by pleading guilty, the petitioner secured both a lower offense level than was applicable to him <u>and</u> a three-point reduction in his offense level under USSG §3E1.1(a).  In sum, the petitioner's guilty plea resulted in a sentence which was far lower than any he could have hoped for had he insisted upon a jury trial and lost.

Finally, the Court notes that the bases of the petitioner's claims against counsel either are factually or legally baseless in any event.  That is, the simple fact that defense counsel was pursuing elected office as the "Chief Prosecutor" at the time that he represented the petitioner does not, without more, give rise to an actual conflict of interest as the petitioner has claimed.  Instead, to prevail on a claim of an actual conflict of interest between himself and his former attorney, the petitioner must show (1)that his interests diverged with respect to a

material, factual or legal issue or to a course of action," see Mickens v. Taylor, 227 F.3d 203, 213 (4th Cir. 2000) ; and (2) that the conflict of interest adversely affected former counsel's performance, see Fullwood v, Lee, 290 F.3d 663, 689 (4th Cir. 2002), citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).

Notably, the petitioner has failed to identify any matter over which he and counsel's interests actually diverged. Moreover, the Court finds that trial counsel zealously advocated the petitioner's rights both by securing a favorable plea agreement for him, and by ensuring that such agreement was adhered to, notwithstanding evidence of greater potential exposure for the petitioner.

Similarly, the petitioner's claim that counsel was unprepared to argue for a downward departure and to challenge "unrelated prior criminal behavior, or challenge same pre-sentencing . . . " is factually baseless inasmuch as the underlying record reflects that counsel sufficiently articulated an argument for a variance for the petitioner. Indeed, counsel pointed to favorable matters in the petitioner's background which the government conceded were accurate. Problematic for the petitioner, however, was his history of reckless violations of the law which the Court was duty-bound to consider in determining whether or not a sentence below the advisory Guidelines range was appropriate.

Furthermore, the Court observes that the petitioner did not bother to point the Court to what, in specific, he believes counsel should have challenged.  In this case, such a vague and specious assertion by the petitioner certainly cannot support a conclusion that counsel's performance was in any way inadequate or prejudicial to him.

### III.  CONCLUSION

The petitioner is not entitled to raise the latter portion of his second claim, and he has failed to establish either ineffective performance or prejudicial result as to his remaining allegations.  Therefore, Rule 4(b) of the Rules Governing Section 2255 Proceedings requires this Court to dismiss the instant Motion to Vacate.

### V. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: December 20, 2007

Frank D. Whitney
United States District Judge

13